IN RE FREEHOLDERS' PETITION.
ROSE ROY ET AL., APPELLEES, V. BLADEN SCHOOL DISTRICT
No. R-31 OF WEBSTER COUNTY, NEBRASKA, APPELLANT.
84 N. W. 2d 119

Filed July 12, 1957. No. 34194.

*Richard A. Dier,* for appellant.

William. H. Meier, for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Thirteen named freeholders, who severally owned 16 described quarter sections of farm lands located in reorganized Bladen school district No. R-31 of Webster County, originally filed a petition with a board consisting of the county superintendents, county clerks, and county treasurers of Webster and Franklin Counties, seeking under section 79-403, R. S. Supp., 1955, to have certain lands set off from the Bladen district and attached to reorganized Campbell school district No. R-13 of Franklin County. After due notice and hearing by such board, it failed to agree, and the freeholders, hereinafter called plaintiffs or designated by name, appealed to the district court. Hereinafter the Bladen school district will be called defendant or Bladen district, and Campbell school district will be called Campbell district.

Plaintiffs' "In Equity Petition on Appeal," first described the lands respectively owned by each plaintiff in the Bladen district; and then alleged that said lands adjoin Campbell district, that the territory proposed to be attached has children of school age residing therein with their parents or guardians, and that said children are each more than 2 miles from the Bladen schoolhouse and at least ½ mile nearer the Campbell schoolhouse, measured by the shortest route possible on section lines or traveled roads open to the public. The reasons alleged by plaintiffs in their petition for the proposed change were that: (1) Their described real estate was closer to the Campbell schoolhouse than it was to the Bladen schoolhouse; (2) that said real estate was within the trading area of Campbell and not within that of Bladen; and (3) that plaintiffs and occupants of said real estate prefer the town of Campbell and the Camp-

bell school over any other town or school, and desire to have their children, residing on or who may hereafter reside thereon, attend Campbell school. After reciting the procedure which had been had before the board and its failure to agree, about which there is no dispute, plaintiffs incorporated their original petition in their petition on appeal and alleged that it was just and proper and for the best interests of petitioners that said lands be transferred from Bladen district to Campbell district. They prayed for such judgment and equitable relief.

Defendant's answer alleged that plaintiffs' described lands were located in the Bladen district, which has been a reorganized and consolidated Class II school district for more than a year prior to the filing of plaintiffs' petition, and is and has been operating as such since June 1954; and that Bladen district has installed and operated school bus transportation service to Bladen schools since its reorganization and has offered and continues to offer such services to any and all school-age children residing on all the lands described in plaintiffs' petition which were legally included in Bladen's reorganized school plan by more than 70 percent petitions of former rural districts Nos. 59 and 38. Defendant then denied generally and prayed for denial of plaintiffs' petition and costs. Plaintiffs' reply thereto denied generally.

Requests for admissions were filed by both plaintiffs and defendant, and answers thereto were respectively filed. Subsequently, plaintiffs' motion for summary judgment was overruled, and after hearing on the merits, judgment was rendered which set off from Bladen district five described quarter sections of land upon which children of school age resided, and attached them to Campbell district, but refused to so set off other described lands as sought by plaintiffs, and ordered each party to pay his own costs. Thereafter, motions for

new trial filed by both plaintiffs and defendant were overruled.

Therefrom defendant appealed to this court, assigning some eight alleged errors, the effect of which was to assert, insofar as important here, that the judgment was not sustained by the evidence but was contrary thereto and contrary to law. We sustain those assignments. On the other hand, plaintiffs cross-appealed, assigning in effect, so far as important here, that the trial court erroneously construed and applied the statute and erred in refusing to find and adjudge that it was just and proper and for the best interests of plaintiffs to set off all the lands described in plaintiffs' petition from Bladen district and attach them to Campbell district. We conclude that plaintiffs' cross-petition has no merit because the trial court erred in setting off any of plaintiffs' described lands from Bladen district and attaching them to Campbell district.

As summarized, the record discloses the following situation: Plaintiffs' lands are all located in Bladen district and generally extend along the western border thereof to its southern line. From north to south such lands include all of Section 27, and three quarter sections in Section 34, all in Township 4 North, Range 12 West of the 6th P. M.; and all of Section 3, three quarter sections in Section 10, and the west half of Section 15, all in Township 3 North, Range 12 West of the 6th P. M. The west border of such sections adjoins the Campbell district's east border.

Mrs. Irvin L'Heureux owns the east half of Section 27, which does not adjoin Campbell, and no children of school age reside thereon. Mrs. L'Heureux and her husband, Joe H. L'Heureux, live in the town of Campbell. He owns the southwest quarter of Section 10 which adjoins Campbell district, but no children of school age reside thereon.

Henry Eckhardt owns the west half of Section 27, and the northwest quarter of Section 34, which ad-

join Campbell district. He lives on the southwest quarter of Section 27, and one grandson of school age resides thereon with him.

Charles P. Kral and Mrs. P. Kral own the southeast quarter of Section 34 and the northeast quarter of Section 3, which do not adjoin Campbell district, and no children of school age reside thereon.

Anna Kuhlman owns the southwest quarter of Section 34 which adjoins Campbell district, and two children of school age reside thereon.

Rose Roy owns the northwest quarter of Section 3 which adjoins Campbell district, and one child of school age resides thereon.

Ben H. Wessels and Emma Wessels own the south half of Section 3, the west half of which adjoins Campbell, but no children of school age reside on their land.

Rudolph Betz and Mrs. Rudolph Betz own the northeast quarter of Section 10, which does not adjoin Campbell district but has one child of school age residing thereon.

When this proceeding was filed, Wilella Wilson owned the west half of Section 15, which adjoins Campbell district. Since that time, however, Ardner Hanson has purchased the southwest quarter, where he resides with four children of school age, and he rents the northwest quarter of Section 15.

Concededly, plaintiffs' lands were each more than 2 miles from both the Bladen and Campbell schoolhouses, and at least ½ mile or more nearer the Campbell schoolhouse than the Bladen schoolhouse, but as hereinafter observed, that fact was not controlling as a reason for granting the relief sought by plaintiffs.

As shown by evidence adduced in plaintiffs' behalf, the reasons relied upon by them to obtain relief were: (1) They usually did their trading and banking in the town of Campbell; (2) with one exception, it was their post-office address, with rural route delivery; (3) they were on the Campbell telephone exchange; (4) with one

exception, they attended church at Campbell; (5) they preferred to have their children attend school at Campbell; (6) in case of fire, although plaintiffs generally belonged to the Bladen rural fire district, they would call the Campbell fire department, because it would take longer to call the Bladen fire department by going through two telephone exchanges; and (7) in the Bladen reorganization proceedings, although they then lived in rural school districts Nos. 59 and 38, they desired to attend Campbell and did not sign the petitions therefor, although most of them had previously sent their children to Bladen district, which concededly now has an accredited Class II school, giving instruction from kindergarten to and including the 12th grade.

None of the plaintiffs or their witnesses criticized or complained about or personally objected to the transportation, leadership, administration, condition, or efficiency of Bladen schools. In fact, they admitted that Bladen district offered efficient bus transportation service to and from its school, and operated a good and satisfactory educational institution. Plaintiffs simply preferred Campbell district, whose board gave their children free bus transportation and free tuition.

In the light of such evidence, we are required to construe and apply section 79-403, R. S. Supp., 1955. In that connection: "The fundamental principle of statutory construction is ascertainment of the intent of the legislature." State ex rel. Thayer v. School District, 99 Neb. 338, 156 N. W. 641.

In State ex rel. Douglas County v. Drexel, 75 Neb. 614, 106 N. W. 791, cited with approval in Hansen v. Dakota County, 135 Neb. 582, 283 N. W. 217, this court held: "The object of the court in construing an act of the legislature is to ascertain the intention of the lawmakers. That intention, when ascertained, will prevail over the literal sense of the words used."

In Hevelone v. City of Beatrice, 120 Neb. 648, 234 N. W. 791, this court held that: " 'In the exposition of

statutes, the reason and intention of the lawgiver will control the strict letter of the law when the latter would lead to palpable injustice or absurdity.' Kelley v. Gage County, 67 Neb. 6." See, also, Central Power Co. v. Nebraska City, 112 F. 2d 471.

In State ex rel. Johnson v. Consumers Public Power Dist., 142 Neb. 114, 5 N. W. 2d 202, this court held: " 'That which is implied in a statute is as much a part of it as that which is expressed.' 59 C. J. 973."

In Howell v. Fletcher, 157 Neb. 196, 59 N. W. 2d 359, this court held: "In construing a statute the legislative intent may be gathered from the reason for its enactment."

In Kinney Loan & Finance Co. v. Sumner, 159 Neb. 57, 65 N. W. 2d 240, quoting with approval from 82 C. J. S., Statutes, § 323, p. 593, this court said: " 'In construing a statute, the court must look to the object to be accomplished, the evils and mischief sought to be remedied, or the purpose to be subserved, and place on it a reasonable or liberal construction which will best effect its purpose rather than one which will defeat it.' "

In Placek v. Edstrom, 148 Neb. 79, 26 N. W. 2d 489, 174 A. L. R. 856, this court held: "In enacting a statute, the Legislature must be presumed to have had in mind all previous legislation upon the subject. In the construction of a statute courts must consider the pre-existing law and any other laws relating to the same subject.

"Where the general intent of the Legislature may be readily ascertained, yet the language used in a statute gives room for doubt or uncertainty as to its application, courts may resort to historical facts or general information to aid them in interpreting its provisions."

In that connection, section 79-403, R. S. Supp., 1955, provides in part: "Any freeholder or freeholders may file a petition with a board consisting of the county superintendent, county clerk, and county treasurer, ask-

ing to have any land described therein set-off from the district in which it is situated and attached to some other district. The petition shall state the reasons for the proposed change and show: (1) That the land therein described is owned by the petitioner or petitioners; (2) that the land adjoins the district in which it is to be attached; (3) that the territory proposed to be attached has children of school age residing thereon with their parents or guardians; and (4) that they are each more than two miles from the schoolhouse in their own district, and at least one half mile nearer to the schoolhouse in the adjoining district, which distance shall be measured by the shortest route possible upon section lines or traveled roads open to the public * * *. The petition shall be verified by the oath of the petitioner or petitioners. The board may, after a public hearing on the petition, thereupon change the boundaries of the districts so as to set-off the land described in the petition and attach it to such adjoining district as is called for in the petition whenever they deem it just and proper and for the best interest of the petitioner or petitioners so to do. Notice of the filing of the petition and hearing thereon before the board shall be given at least ten days prior to the date of such hearing, by one publication in a legal newspaper of general circulation in such district, and by posting a notice on the outer door of the schoolhouse in each district affected thereby, which notice shall designate the territory to be transferred; Provided, that the petitions requesting transfers of property across county lines shall be addressed jointly to the county superintendents of the counties concerned, and the petitions shall be acted upon by the county superintendents, county clerks, and county treasurers of the counties involved as one board. Appeals may be taken from the action of such board, or when such board fails to agree, to the district court of the county in which the real estate is located within twenty days after entry of such

action on the records of the board by the county clerk of the county in which the real estate is located or within six months after the petition is filed and the board fails to agree, in the same manner as appeals are now taken from the action of the county board in the allowance or disallowance of claims against the county."

Other questions are raised and discussed with relation to construction and application of said section, but, as we view it, they need not be discussed because decision depends upon construction and application of that section in three respects to the undisputed pertinent facts appearing in the record. In that connection, we are required to determine only three propositions, to wit: (1) The nature of proceedings before the board and the capacity in which it is required to act; (2) the manner and character of the hearing upon appeal to the district court and this court; and (3) the primary factors to be considered in determining whether or not it is "just and proper and for the best interest of the petitioner or petitioners," to set off the land described in plaintiffs' petition from the Bladen district and attach it to the Campbell district.

With respect to propositions (1) and (2) aforesaid, section 79-403, R. S. Supp., 1955, provides: *"The board may,* after a public hearing on the petition, thereupon change the boundaries of the districts so as to set-off the land described in the petition and attach it to such adjoining district as is called for in the petition whenever *they deem it just and proper* and *for the best interests of the petitioner or petitioners so to do."* (Italics supplied.) It will be noted that such action of the board is not a mandatory duty or obligation, but depends upon whether the board, after hearing, deems "it just and proper and for the best interest of the petitioner or petitioners so to do."

In other words, as stated in Miller v. Schlereth, 151 Neb. 33, 36 N. W. 2d 497, and applicable here: "In gen-

eral, the word 'may,' used in statutes will be given ordinary meaning, unless it would manifestly defeat the object of the statute, and when used in a statute is permissive, discretionary, and not mandatory. See, Lansdown v. Faris, 66 F. 2d 939; Rowenhorst v. Johnson, 48 S. D. 325, 204 N. W. 173."

Also, said section provides that: "Appeals may be taken from the action of such board, or when such board fails to agree, to the district court * * * *in the same manner* as appeals are now taken from the action of the county board in the allowance or disallowance of claims against the county." (Italics supplied.) Such manner of appeal is provided by sections 23-135 to 23-137, R. R. S. 1943.

In Campbell Co. v. Boyd County, 117 Neb. 186, 220 N. W. 240, this court, in construing and applying such sections, together with what is now section 27-1305, R. R. S. 1943, concluded that the allowance or disallowance of a claim by the county board was the exercise of a quasi-judicial power, and that an appeal therefrom brought the action to the district court for trial de novo as "though the action had been originally instituted in such court."

In Mathews v. Hedlund, 82 Neb. 825, 119 N. W. 17, this court said: "It will therefore be observed that the personnel of the board is not a test of the jurisdiction of the courts to review the orders made, but rather the nature of the power exercised by that board."

Section 25-1104, R. R. S. 1943, provides: "Issues of law must be tried by the court, unless referred as provided in section 25-1129. Issues of fact arising in actions for the recovery of money or of specific real or personal property, shall be tried by a jury unless a jury trial is waived or a reference be ordered as hereinafter provided."

In that connection, the case at bar is not an action for "the recovery of money or of specific real or personal property." As held in Lett v. Hammond, 59 Neb. 339,

80 N. W. 1042: "The nature of an action, whether legal or equitable, is determinable from its main object as disclosed by the averments of the pleading and the relief sought."

In the light of the foregoing, we conclude that the board provided for by section 79-403, R. S. Supp., 1955, was required in the case at bar to exercise a quasi-judicial power, equitable in character. Thus, on appeal to the district court, the cause was triable de novo there as in any other original equitable action. Feight v. State Real Estate Commission, 151 Neb. 867, 39 N. W. 2d 823, is distinguishable in some respects, except in principle. In such respect, it supports the foregoing conclusions by analogy. It is elementary, therefore, that upon appeal to this court the cause will be tried de novo in this court.

We turn then to proposition (3). In that connection, we conclude that in the enactment of section 79-403, R. S. Supp., 1955, authorizing the board to set off lands from one school district and attach it to an adjoining district, whenever after a public hearing it deems it just and proper and for the best interests of the petitioner so to do, the intention of the Legislature was that the board in making such determination should predicate it upon the convenience of transportation of children of school age to schools, and the educational welfare and needs of petitioners' children, and not the mere personal preferences of petitioners based upon noneducational reasons. That section and others in pari materia deal with schools in order to promote their proficiency in the education of petitioners' children of school age, and not the secular business affairs of petitioners. In other words, the best interests of the petitioner or petitioners means the best educative interest of petitioner or petitioners and not the best noneducational interest of petitioner or petitioners.

Section 79-403, R. S. Supp., 1955, has been in our statutes in one form or another since 1909. It is classified

in the statutes under "Provisions Applicable To All Schools." In the light of subsection (4) thereof, the act was historically used by Class I rural school district patrons having children of school age, when they each lived more than 2 miles from the schoolhouse in their own district, and at least ½ mile nearer the schoolhouse in the adjoining district, where travel thereto and therefrom was performed on foot, horseback, or by family transportation. The proceedings at bar concern two reorganized districts wherein lands involved are located several miles from either schoolhouse, with little difference in distance between them. Both districts provide satisfactory pick-up and delivery bus service for pupils in their districts. The record shows without dispute that the difference in travel distance from plaintiffs' lands to one schoolhouse or the other was not a controlling factor in determining plaintiffs' right to the relief sought by them. We conclude that the factor of access to and transportation of plaintiffs' children to schools was of no controlling significance.

In that regard, we conclude that the Legislature did not intend, in this modern highway and transportation age, to enact a statute concerned with schools, distances, and education of pupils for the sole purpose of making convenient allocations of land to school districts based upon individual preferences or secular business reasons of owners having nothing to do with educational efficiency. No witnesses criticized the leadership, management, curricula, or efficiency of the Bladen schools. As a matter of fact, all witnesses approved it as entirely satisfactory. Generally, those who previously had their choice of schools either contracted with Bladen for elementary pupils, or, under the free high school tuition law, voluntarily sent their children to Bladen schools when they could have chosen any other school in the area. The common statement of all plaintiffs' witnesses in the hearing at bar was simply that they now "prefer" Campbell instead of Bladen, which was insufficient to support

a grant of the relief sought by plaintiffs.

The Legislature has placed great emphasis upon the reorganization and consolidation of numerous inefficient and costly small school districts. Bladen and Campbell districts are two examples of that forward progress in eliminating Class I elementary rural school districts which contract with other districts for elementary education and obtain free high school education elsewhere. Bladen was one of those districts which, in completing its reorganization, included in it the districts which had formerly contracted for their grade school education with Bladen town school district or obtained free high school education for their children there. Class I rural school districts Nos. 59 and 38, in which plaintiffs' lands were located before Bladen was reorganized, each executed petitions by more than 70 percent of their respective legal voters requesting such reorganization. True, plaintiffs did not sign such petitions, but under the statute they were bound thereby, and they now seek to escape their personal and economic responsibility to Bladen district, by taking advantage of section 79-403, R. S. Supp., 1955, as soon as it became legally effective as amended, without supporting their petition with any controlling educational factors relating to the convenience, necessity, or welfare of the few pupils concerned.

For reasons heretofore stated, we conclude that the judgment of the trial court should be and hereby is reversed and plaintiffs' petition is dismissed. All costs are taxed to plaintiffs.

REVERSED AND DISMISSED.