REQUESTED BY: Ron Lahners, Lancaster County Attorney, Lincoln, Nebraska.
1. Where taxes have been paid through April 1 of the year of transfer and the second half taxes which are not delinquent until August 1 have not been paid, is the transfer of land between school districts on June 1 valid?
2. If all taxes are paid prior to August 1 of the year of transfer, may this defect be thereby cured?
3. Where such taxes are paid after June 1 to whom are they to be disbursed.
1. No.
2. Yes.
3. To the district from which the land was transferred.
1. You have informed us that the following situation exists in your county. That a free holders petition was duly filed and all the requirements of Neb.Rev.Stat. 79-403
(Reissue 1976), were met. The free holders board as required by law acted upon the petition and granted the transfer of the land. All taxes on the land which were due through April 1, 1980, had been paid. The second half taxes which were due but not delinquent until August 1, 1980, had not been paid.
Section 79-403 sets forth a number of steps which must be followed where an individual wishes to transfer land from one school district to another. This statute, or one similar to it, has been in existence since at least 1909. See, Laws 1909, Chapter 117, Section 1, page 451. The statute was amended by the Legislature in 1969 in Chapter 709, Section 1, page 2720 and Chapter 710, Section 1, page 2727. At that time, as a part of Chapter 710, LB 1378 was adopted. It was entitled an act to amend section 79-403 Revised Statutes of Nebraska, 1943, as amended by section 1 of LB 727, Eighty-eighth Session, Nebraska State Legislature 1969, relating to schools, to change requirements for the transfer of land by free holders petition and the effective time of such transfer to repeal the original sections and declare an emergency. Section 79-403.01 was enacted in that bill. It now provides:
 "Any transfer of land under the provisions of section 79-403 for which the petition was filed prior to January 1, 1970, shall be effective upon the date the petition is approved. For those petitions filed on or about January 1, 1970, they shall be effective on June 1 of the year in which the transfer is approved as hereinafter set forth; Provided, that the petition shall be filed on or before February 15 for the transfer of land to be effective on June 1 of the same school year. The board shall hear all petitions prior to March 10 of the year in which the transfer is to be effective, and shall act upon such petitions on or before March 15 of each such year. All taxes on the land involved in transfers on petitions must be paid at the time of transfer. Any land transferred pursuant to section 79-403 shall be subject to the existing bonded indebtedness of the district from which transferred at the time of transfer as fully as though the land had not been transferred."
(Emphasis added.)
The discussion in committee hearings and floor debates (see, committee hearings and floor debates), made clear that these particular provisions were placed in the statutes in the 1969 enactment for the purpose of protecting the financial integrity of such school districts particularly as it related to the issuance and repayment of bonds.
The initial question that must be answered is whether or not payment of existing taxes is a jurisdictional step to the grant of transfer as prayed for in the petition. It is clear that under § 79-403, absent compliance with the provisions of that statute, the board is required to deny the petition. However, where there has been compliance with 79-403, our courts have characterized the process as quasijudicial and equitable in character. See, Friesen v.Clark, 192 Neb. 227, 220 N.W.2d 12 (1974).
Ordinarily where a statute confers a right upon individuals and specifies steps which are necessary to secure the right, those steps must be complied with prior to effectuation of the right granted by the act. In the case of a free holders petition for the transfer of land from one school district to another, however, the requirements of 79-403. 01 that the taxes be paid prior to June 1 does not come into effect until after the board is required to act upon the petition either granting or denying the petition. No duty to pay the taxes arises until the effective date of the transfer which by statute is June 1. Thus, we believe that the act of the board is incomplete up until the taxes are paid on or prior to June 1. Absent payment of the taxes the board's action is incomplete. Thus the requirements of § 79-403.01 are difficult to characterize as jurisdictional. However, they remain a requirement for transfer of the land. Therefore the transfer cannot occur. Thus, in a case such as the one you present, where a proper petition is filed, the jurisdictional steps are compiled with, the board grants the transfer, and taxes are due and not paid on June 1, the transfer is not valid.
2. In your second question you ask whether or not that is the type of defect that can be cured by paying all taxes before August 1, 1980. You, of course, select the date August 1 of the year in question because under Neb.Rev.Stat. 77-2004
(Reissue 1976), taxes in Lancaster County become delinquent April 1 on the first half and August 1 on the second half.
One question which arises is what the phrase `all taxes on the land involved' means. Unfortunately it is not a phrase used in other tax statutes. Thus its meaning is unclear. It does not use the language `all taxes due' or `all taxes delinquent' or `all taxes assessed.' Obviously no duty to pay the tax arises until they become due. Pursuant to the provisions of Neb.Rev.Stat. § 77-203 (Reissue 1976), all general real estate taxes become due and payable on December 31, next following the date of levy. They continue as a first lien on such property until paid or extinguished as provided by law. However, they are not delinquent except as provided in Neb.Rev.Stat. §§ 77-204 and 77-205 (Reissue 1976).
In the present case the taxes on the property become due on December 31 preceding the year of transfer. The first half of those taxes were paid prior to transfer and the second half although due were not delinquent until August 1. We presume for purposes of answering this question that the taxpayer, or his mortgage holder, was taking advantage of that provision of law. As a caveat it should be pointed out here that the taxes imposed upon land include school taxes, county taxes, and other governmental subdivision taxes which may be imposed by virtue of the location of land with relationship to subdivision boundaries.
There are no limitations in § 79-403.01 with respect to what taxes are due whether they are school taxes, county taxes or other taxes. Thus from a reading of the statute, it is difficult to determine exactly what the intent of the Legislature was in utilizing the precise language set forth in § 79-403.01. We believe from a review of the legislative history that their intent was to protect the fiscal integrity of the school district from which the land was being transferred both from the standpoint of the collection of taxes that were levied on land transferred as well as continuing to subject the transferred land to the liability for bonds which had been issued prior to transfer. We believe this is a reasonable construction of the intent expressed by the Legislature in adopting this statute. If that is the case, the concern is the fiscal integrity of the school district.
We also believe that this statute is remedial in character and thus subject to a liberal rather than a strict construction. See, Sun Ins. Co. of New York v. Aetna Ins.Co. of Hartford, Conn., 169 Neb. 94, 98 N.W.2d 692 (1959).
Thus by construing the statute liberally and attempting to achieve the ends sought by the Legislature we believe that the failure to pay `all taxes on the land involved' prior to June 1 is a technical or procedural defect rather than a substantive defect. Curing that defect within the time provided for the payment of general taxes under other statutes would seem to us to be sufficient compliance with the statute to allow the transfer to take retroactive effect to June 1 of the transfer year.
3. In your last question you ask how the taxes for the second half of the year are to be disbursed where they are paid after June 1 of the year. As you know, taxes are levied in one year to be due and delinquent in the following year based upon the value as of January 1 of the year in which the levy is imposed. The school levy is imposed by the county board for the purpose of funding the operation of the schools. It is adopted after the budget for the fiscal year is adopted by the school district. On the combined levy the mills imposed for purposes of school district taxation reflect the amount of money necessary to be raised from the property for that fiscal year. It is thus our view that the taxes paid upon land which is transferred from one district to another should be disbursed to the school district in which the land was located prior to its transfer. In subsequent years, of course, the taxes should be disbursed to the school district to which the land is transferred.